## Sell *v.* Gup et al., Appellants.

Argued January 23, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Cecil P. Harvey,* with him *W. E. Sharman,* for appellants.

*Charles H. Weidner,* and *Stevens & Lee,* for appellee, were not heard.

OPINION BY MR. JUSTICE STERN, March 25, 1940:

The facts in this case speak so loudly for themselves that but to state them is to decide the issue.

Plaintiff's bill in equity prays that certain agreements and deeds be adjudged null and void, and that certain reconveyances of property be ordered. According to the facts found, upon adequate evidence, by the Chancellor, plaintiff was the victim of flagrant overreaching on the part of Abe L. Gup, who will hereinafter be referred to as defendant, his wife, Germaine B. Gup, being but a nominal party.

In 1936, when the transactions here involved took place, plaintiff was a maiden lady of the age of seventy-seven, and living alone. While not wholly lacking soundness of mind, she had become mentally enfeebled and the likely prey of crafty persons. Defendant is in his thirties, and, though not practicing his profession, is a law school graduate. Plaintiff owned some securities which were not very fruitful of income, and she testified that defendant told her he could make more for her out of her assets. According to his version, she asked him if he "could make a trade for her." A week later he came to her residence, went with her to her bank, where he obtained her securities, and then to his office, where he prepared an agreement with her for the exchange of real estate. By its terms she was to convey to him a lot of ground in Bern Township, Berks County, and he was to deed to her 7½ acres of land and a bungalow

thereon in Robeson Township in the same county. The agreement placed a value of $3,000 on her property and $6,000 on his for the purpose of the exchange, and accordingly she was to give him in addition her judgment note in the sum of $3,000, payable one year thereafter and bearing interest at the rate of 3% per annum. There is no finding by the Chancellor as to the value of her property; it was not productive of income but apparently she had paid $5,000 for it in 1930. As to defendant's property, there was testimony by witnesses for plaintiff that its real value was not more than $450 or $500, and, by a tenant who had occupied it, that defendant, a few months before the transaction with plaintiff, had offered the property to him for $200 subject to a purchase money mortgage of $1,000. While defendant denied the truth of this testimony, the evidence indicates that the property was an extremely poor one for reasons which need not be detailed. It was rented for $15 per month, and defendant was to continue to collect the rent, pay the taxes and other expenses, and remit to plaintiff, as the net income therefrom, the sum of $60 per annum.

On the very same day on which this agreement for the exchange of the properties was executed, defendant prepared the necessary deeds and had them signed, acknowledged and recorded. Plaintiff delivered to defendant her judgment note for $3,000, and he immediately entered judgment thereon for $3,450, which included an attorney's fee of 15% for collection. At the same time defendant prepared an agreement which he and plaintiff signed, whereby he was to be allowed to hold the securities which he had obtained from her as collateral for the $3,000 due him; she also signed and gave him a formal collateral note.

The day following these transactions defendant sent for plaintiff to come to his office, and he then and there drew up another agreement whereby he was to sell to her eleven lots adjoining the bungalow property for the

sum of $3,000, for which she was to give him her judg-
ment note payable a year thereafter and bearing interest
at the rate of 4% per annum after the first year; the
securities already obtained from her were to be held as
collateral security for this note also, and to that end
she signed and delivered to him another collateral note.
He at once prepared the deed for these lots, which he
and his wife thereupon executed and recorded, and plain-
tiff gave him the $3,000 judgment note. According to
plaintiff's testimony, denied by defendant, she never saw
either the bungalow property or the lots until two or
three weeks after the completion of these transactions.[1]
While there was no direct evidence offered as to the fair
value of the lots, plaintiff produced a witness whose tes-
timony, denied by defendant, was to the effect that, two
years before, defendant had offered him the bungalow
and the 7½ acres, together with the eleven lots, for
$2,000, but the witness considered this more than the
properties were worth. Defendant testified that he told
plaintiff he had a purchaser willing to buy from her
three of the lots for a price which would have netted
her a proportionate profit, but the alleged purchaser was
not identified and defendant made the statement to plain-
tiff only after he knew that the latter had consulted
counsel in order to obtain redress from him.

Apparently it did not take long for plaintiff to realize
that instead of increasing her income she had gravely
jeopardized her position, since she now owed $6,000 on
judgment notes, the interest on which for the first year

---

[1] It would seem to weigh against rather than in favor of defend-
ant that on the day he sold her the lots he had her endorse on a
plan thereof the statement that she had personally visited and in-
spected them, and about two or three weeks later he got her again
to endorse on photographs and plans of the properties a statement
that she had that day personally visited and inspected the house,
the 7½ acres and the 11 lots. He also had her sign another state-
ment to the effect that the properties were all exactly as represented
to her, and that she was satisfied with them and had no complaint
of any kind to make "regarding anything."

would amount to $90, and each year thereafter to $210, and as against this she was to receive as rent but $60 per annum, and even that amount only if the bungalow remained tenanted,[2] to say nothing of the dubious value of the properties she had received in exchange for her own. She promptly demanded a rescission of the transactions.

The court entered a decree declaring the agreements between the parties null and void; ordering defendants to return to plaintiff the judgment notes and collateral notes which she had given them, as well as her securities; declaring the judgment entered on the one note to be null and void, and ordering that it be marked satisfied; declaring invalid the deed given by plaintiff for the Bern Township lot of ground and ordering defendants to reconvey that property to plaintiff; and directing plaintiff to reconvey to defendants the bungalow with the 7½ acres, and also the eleven lots.

The court held that there was a confidential relation between the parties. In view of the fact that defendant undertook to manage plaintiff's assets for her so as to increase her income and that she apparently relied upon him for that purpose, there was ground to warrant the court in so holding. However, the question is here immaterial because, even if such a relationship did not exist and plaintiff was obliged to sustain the burden of demonstrating that the agreements should be rescinded, there can be no doubt that she succeeded in that regard. We have here a case of mental weakness, dependence and trust, on the one side, and of domination on the other; of gross unfairness in the transactions; of a failing intellect lured into improvident ventures by imposition and artfulness. The senility of plaintiff, the suddenness with which the propositions were presented to her, their almost instantaneous consummation, the lack of opportunity to plaintiff to exercise a deliberate judg-

---

[2] As a matter of fact, the tenant vacated the property a month after plaintiff acquired it.

ment or to consult legal or business counsel, the abuse of the confidence which defendant had led her to repose in him, the unconscionable nature of the bargain, the inadequacy of the consideration received by her, and her subjection to judgment debts which she would obviously have no means of meeting and which were therefore likely—perhaps designed by him—eventually to strip her of all her possessions,—these were circumstances constituting a situation which entitled plaintiff to the equitable relief given her by the court.

The decree is affirmed; costs to be paid by defendant Abe L. Gup.